Case number 21-6053, Thomas Norton v. Joy Beasley, oral argument not to exceed 15 minutes per side, Carol Redford for the appellant, you may proceed. Please the court, my name is Carol Redford III, I go by Tripp. I represent the appellants and I have represented them for the entirety of this 14 years of litigation. I have reserved three minutes for rebuttal. Thank you for taking the time today for oral arguments. Some of us have a new appreciation for oral arguments and being permitted to present oral arguments in the last few months and years and I think this case is very important for oral argument. My clients have been involved in this litigation for the 14 years and they feel like many times they haven't been heard. They certainly haven't been heard or felt they've been heard by the agency involved and to a certain extent the federal court. We've gone through the state court system on two runs, up the ladder and back down twice. What I want to talk to the court about because I know a 14 year case cannot be crammed into 12 minutes. I want to give a little bit of context on these historic nominations and then I want to talk a little bit about what I think are the legal issues of importance. I think we need the first to get to the second. Our fundamental theme is let's talk about the foregone conclusion of an historic nomination and the arbitrary and capricious action that's been part of it. Can I just pause over just one point? There's a standing issue in the case and the district court thought well the reason they're standing, so you won on this ground, is that your clients might want to sell their property or use their property for coal mining, something that's prohibited under the designation. But then it seems from the briefing that you're saying no, my clients are not planning to sell the property for coal mining or use it for coal mining. So what is your injury? Let's just say you're right about everything in terms of this 14 year odyssey. What is the injury your clients are suffering? Our injury is to our constitutional rights, Judge. What's happened here is... I've got to just help you out here. You can't... I understand. That doesn't quite work.  You have to do one more step and say... So for example, you couldn't bring this claim on behalf of my wife who lives in Ohio and say it's outrageous what the federal government is doing to these properties in Kentucky because she lives in Ohio. So what is it about the constitutional claim that's injuring your clients as distinct from my wife if she thought you were right? Well, my clients own these properties or have ownership interest in these properties. And our position from the very beginning has been this impairs our ownership rights to our property. The fact that someone else is impairing or impacting our real property rights is a harm, is an injury to us. Now granted the argument made by the historical... Would you say the same thing if the designation doubled the value of the property? If my clients said they didn't want it, that's in the eyes of the beholder. That's much like a gold faucet in your bathroom. It may or may not add value to your property. My clients value their property for what it is, not what somebody else wants it to be. And they believe they're entitled to control the entire bundle of sticks of their property, not somebody else. Not a non-owner, non-resident who prepares a nomination package which then creates the foregone conclusion. That fundamentally started the problem here. Give me your best theory of what could hurt your clients down the road. The best theory, I can tell you what it is. Is the federal government decides to not build the interchange and run the interstate through some of my clients' property. Because they are required, the federal government is required to look elsewhere for property. Your clients want the interchange to go through? Correct. That would certainly enhance the value of their agricultural property. You're talking about a road? Interstate, yes. There's one being proposed? Long-term issues are there. There are multiple interchanges on the drawing boards. People believe it's going to come through here or come through there. Is this in the record? It's in the original record as fundamentally part of our arguments, which is why we're harmed. In fact, testimony was presented to that effect at the state court hearings, which is why the state courts ruled the way they ruled, including the state appellate courts. For me to just get it, I know about 75 and you're talking about them. There's proposed plans for another interstate, maybe one going east-west, and it's not as likely to go through your area because of the designation. Or the interchanges to be added along Clark County, Fayette County, won't be added where my client's property is because the mandate of the federal government is, if you were part of a historic nomination. That's in the ballpark. All right, thank you. All right, keep going. Now go back to your arbitration point. Okay, so let me just start with the problems that this presented from day one. We have procedural problems. It's the process itself. It's as applied to my clients from day one. It is the statute that controls this act. It says what can be nominated. Landowners get notified and they are given reasonable time to either concur in or object to. That's it. We started there. The regulation then creates all these problems of objectors have to file objections, they have to be notarized. So the disconnect here is what has been the big problem is you get told one thing, but you find out actually the process is different. When the set rules are people can object to or concur in, that makes you think, okay, we're just going to vote. I'm in favor. You're against. It's five to one. That side wins. No. The procedure created by the regs is that you're deemed in. It's an assumed consent. So help me out with this point. So I see all the objections to this vote and that vote. I see all the objections to why are you letting LLCs be voting this way versus that way. But what I don't see in the record of your briefs is something that shows the prejudice from this. In other words, I don't see your saying there were 183. Let's assume 183 was the right number of voters. And if you count the right way and you designate the right way, we would have gotten over 90, whatever, 92 and win. Yes. Where is that in the record or your brief? Okay. This is interesting because you're hooking me into the Salazar case. The dueling numbers back and forth. I don't think this requires case law. Just tell me how the count works in your favor. Do you understand my point? We don't care if there was miscounting that wouldn't have changed the outcome. Right. Right? So it only matters if it would change the outcome. This is also tied to these regulations. So, yes, we dueled with numbers. We had the numbers multiple times to prevail. And the statute says it won't be nominated. The regs don't go there. The regs allow it to continue. Another problem. But we had the numbers. We presented the numbers. We were dealing directly with the state SHPO. Contrary to Salazar. Salazar was not in court. We were in court. We were battling with the SHPO. I was filing matters in the state court proceeding, giving them to SHPO with the numbers. And what were they doing? Every time we would say, here are the numbers and here are the objectors, their crew would go out and try and woo people away and not object. What happened was because the nomination process and the timing, another criticism of ours, is that the keeper gets to control this clock as to when is it final. When does the buzzer ring? When do we count? Is it this second or is it in two days? And what was happening was every time we would get above the number, there was no finality. There was no buzzer ringing. And what would happen? They went out and bought land from two objectors to flip it from two objectors to one proponent, which is what changed the number at the last minute. So, again, you see this. Yes, ma'am. So, Mr. Wilford, is the problem that the statute does not speak clearly to finality? It does not establish when finality occurs? Or is it just that you're saying the government is not abiding by the language of the statute with respect to when an action is final? I think it's in between. I mean, when the vote is final as well. I think it's in between those, Judge. I think what we've learned is it doesn't matter what the statute said. The regulations and whatever other process they applied always made it almost impossible, if not impossible, on objectors to prevail and stop the listing. So it didn't matter. It became this running target of when is it final? And, in fact, I was going to state court asking my judge to enter orders saying, tell the SHPO at this level to stop. We win. We have the numbers. That's also a difference in Salazar. They were not fighting it in court as they were going along. They were just fighting between SHPO keeper and property owners. I think that presents for this court a significant concern, which is everybody outside of the state court system has disregarded what the state court system has said. I don't know what else to do for my clients to get them relief. I've had the state court system say. Something that's not making sense to me is I get the idea that maybe the target and time frame changes during the state proceeding, but we're now doing this after the federal keeper has ruled, and we're supposed to decide whether that's arbitrary and capricious. I assume that timeline wasn't shifting back and forth. No, but that's a different review. That's the review that there was no meaningful review, that he just rubber stamped what the state SHPO did and submitted. That's the two different issues. I'm battling at the state level trying to make this process stop because we had a majority. The time litigation went through the state courts. We're on the federal claim, which is either federal due process or federal APA, arbitrary and capricious. That's right, and what we are arguing there is Mr. Lother did not give meaningful review. He merely rubber stamped what came from the SHPO. He ignored what the state court said, which were part of the record. By rubber stamping, what's the big mistake that the federal keeper made? That he completely ignored what the Kentucky courts had held, that the process was flawed, that it violated my client's constitutional rights, that my client should not be subject to this. Remember, when I hear due process in 14 years, I say that's a lot of process. Is the problem this will be ripe in 30 years? That's a long time. 183 votes. That's a very good point, but whether it's one year or 14 years, it requires somebody to listen and somebody to follow the law. All I've had so far is my state court judges have followed the law. What I didn't have is federal agencies following the law. Remember, that statute says what it said. You like the state court judges? I like all judges. You like what the state court judges did. Why did you file a federal claim then? We filed and followed the procedure set forth in these regs that we have to follow. The only way to challenge these listings is one of four reasons. The procedure irregularity is the only one that comes close to where we are. That's what we followed. That's what we did. That's what Mr. Lother went, eh, I don't care. Your state court judges don't know what they're doing. They don't fully appreciate our regs. How about this is another way of doing this. Is the delisting option, does that go on forever, doesn't it? I mean, can't you always delist? Well, I don't know that. Everybody's told me. Back to using my wife. If my wife moved to this county, buys property, could she move to delist? The problem is you now have a district. It's not one property. It's not one house. It's an entire district. I got it. I got it. I got it, but that would give her the right to object. Why couldn't she bring a delisting petition? Because she doesn't have any grounds to. We have the grounds of procedural irregularity. That's what we presented. There is no other grounds that remotely allows for time. I thought delisting allowed you to take a new vote. No. I'm wrong about that? Yes. No. You're done. It's finished. That's the problem here is, and it's a foregone conclusion, for this goes forever. But this goes forever even if like 80% of the people with property in the district decided enough with this. We want to get the federal government off our back. They couldn't delist then. Is that right? Is that right? I believe that's correct, Judge. I believe that's correct. I'm a little surprised to hear that, but we'll find out from the other side. But even if you do that, what the rest of the regs talk about is you're still eligible for listing, which is the same thing. It's the same effect. In other words, you're saying that even if you could petition to delist and you were successful in that, that's today, but tomorrow the whole process could start all over again if they were able to round up enough votes because you're still eligible. I don't believe that's the case, Judge. I think the way the process reads under the regulations is even if it's delisted, it can still remain eligible for listing. That's what I was trying to say. It never ends. There's no new votes. It's just here, and if the keeper decides it's going back on, it goes back on. Just because of eligibility, because of the votes? We've challenged that from day one, which is, wait a minute, this whole eligible for listing thing, even if we got a majority. Again, this is different. The statute is different than the regs. The statute just says if you get a majority that's opposed, it's not going to be listed. But then they say in the regs, yeah, but it's still eligible for listing and we can still do what we want. My point is my clients just wanted to be left alone. This is like the tray. That part of your argument we definitely understand. I promise you we understand that part of it. It's like the hors d'oeuvre tray at the party. No thanks, no thanks. Seriously, I don't want the salmon. I'm allergic to fish. Go away. Oh, it's an honor and a privilege. Keep your honor and privilege. Leave me out. That's the essence of this from day one. I think we got it. You'll get your full rebuttal. Let's hear from the government. Thank you. Good morning. Thank you, Your Honor. May it please the court, Bridget McNeil for the federal defendants. Thank you for having an argument. I grew up in Middletown, so it's nice to be able to see some family on my trip back. I think you're right to start this case with standing because as we've talked about over 14 years, appellants have never identified a harm suffered. I thought the point he just got, I know this wasn't briefed, but he did just say something that did make sense to me. If someone said, listen, if we get designated, it's less likely that proposed, I assume he's right, it's in the record, that there are proposed interchanges where you might have a spur here, a spur there, or a new east-west interstate and that it's valuable to have that go through your land. I'm sure he's quite right that it hurts to have that done if you're designated. That seems to me quite plausible. Why isn't that enough? Well, Your Honor, this is the first I've heard of this. I'm not aware of where the record is. One feature of subject matter jurisdiction is we're always having to initiate on our own. He did say it's in the record. You don't think that's true? I've not seen a citation to it in the record. And also, whether it's in the record of the state court, it certainly is not in the record of the federal court that I've reviewed. It is notable, in fact, that below they presented absolutely no affidavits or evidence to support a standing allegation. Standing was raised and was briefed. As you noted, the district court resolved it. But for this reason, we think this case is like the Sault Ste. Marie case where there the Sault Ste. Marie tribe simply said, of course we have an adverse impact from this competing casino. And the Sixth Circuit said, that's not enough. You're at summary judgment. You have to present evidence. And with all due respect, there's no declarations. There's no evidence. It was briefed below. I never saw anything about the interchange. It was briefed now. We say we're only allowed to look at what's in the record of the federal case. We say there's no arguments that support actual injury. We dismiss for lack of subject matter jurisdiction. Fourteen years in, let's take a bet on the odds that they come back with a new complaint with an affidavit along these other lines. I'd say they're pretty high. Well, I don't know why it hasn't happened in 14 years. And it certainly wasn't briefed even this time around. If they would have submitted a declaration in the briefing several months ago, even then, I would have, you know, think we would be in a different situation here today. But to your other question about whether that's harm, I think, yes, that would be a different set of circumstances. But I would note that Section 106 only requires the federal agency to take consideration of how a federal project may impact a historic property. And, you know, the other, I think, key point of this is that an injury has to be actual or imminent. You know, if there's sort of some day plans about, you know, something that may happen 20 years down the road, we are 14 years into both of these cases, and apparently this has not materialized yet. Is there any thought of the federal government participating in the state court action, or was that just, it just had nothing to do with you all because it was everything that happened before this federal keeper got involved? Well, my understanding in the state court was proceeding around the same time that the nomination was submitted to the keeper. And then, in fact, you'll see in the record that it was the state office requested it to be returned in response to some of the state court's, I don't think he ever entered orders, but requests. So certainly that was happening, but no, I'm not aware of any attempt to bring the federal government into that case. I'm certainly not aware of any attempt by appellants to file a federal case, which they could have done once the district was listed. That starts the six-year statute of limitations, and if appellants wanted to challenge the application of 60.6G to their interest, that was the forum and the time frame to do it, not state court, and not even trying to bring the federal defendants into state court. I think we have a wrong forum, wrong place. And appellants are represented by counsel. They had every opportunity. They just chose to pursue a different set of claims against a different set of defendants. But what is reviewable today is the denial of the petition to delist. And some of your questions were going to, you know, is there another count? Is there a recount? And the answer is no, but there are four grounds for delisting. And only one of them is prejudicial procedural error. There are other grounds for delisting that could come up in the future. One of them is if the circumstances change and the property or the district, in this case, no longer meets the eligibility criteria. What if a new property owner had nothing to do with this, moves into the district, and could they bring a delisting petition at that point? I do not believe that meets one of the four criteria. It's, you know, the prejudicial procedural error, which we have here, is that there's new information about whether the area, the district or the property is eligible that wasn't available, that the eligibility has deteriorated or been destroyed. And I'm completely blanking on the fourth one. But I don't believe that just a new objection by one owner in the district situation. But I think that's also, I mean, for as much as you had objections here, you did, I think your question as to, like, is this harmless error, is there a difference here, is correct. You had a majority of property owners that view this very favorably. And, in fact, the record. He was, I think I understand. Was that their initial vote, a majority viewing it favorably? Because counsel for the appellate says that there was a particular result, a majority vote. And then there was subsequent action to get vote changes. So was this initial expression of majority interest, as you say, a majority vote? When it came to the Keeper's Office, despite state court proceedings and change in voting, it was submitted to the Keeper's Office in June of 2009, but then immediately withdrawn by the State Preservation Office, I believe, appellant's request. It was submitted again in 2009. And so that is the point at which the State Preservation Office certified that there was not a majority of objecting votes. That's the certification that counts when it comes into the Keeper's Office. Okay. But doesn't the Keeper, in that role, have an independent obligation to review the complete record so that if the Keeper comes in at a particular point in time, that doesn't obviate the obligation to review the record, does it? Oh, certainly not, Your Honor. I'm sorry if I gave that impression. And the record here shows that the Keeper did, you know, come in in September of 2009. Appellants, in fact, requested that the public comment period be extended. And some of the changes that they were talking about, the ownership changes and additional withdrawals of objections, occurred during that time. So the relevant time frame for the Keeper to, you know, certify as the result of their own independent review is the end of the comment period, which under the regulations is 45 days, but here was extended. At the request of appellants, so, you know, the majority owner objector count, that's November 27, 2009, which was the end of the comment period and the day that it was listed on the National Register. Well, I just want to ask you one other question, and I know Judge Sutton was about to ask you a question. So if we were to agree with you that there's no harm in allowing the district to be listed on the registry now, are there any risk of a harm later that could possibly make requirements or restrict the landowner's use of the property based upon some regulation? Well, Your Honor, I think as Judge Sutton's question was getting to, there's certainly surface coal mining that is in the regulations that that is a consideration. Again, all of these are sort of stop and consider requirements on the federal agencies. They don't provide a substantive, you know, you must preserve building X or building Y. You know, the regulations are quite clear and the 1980 amendments from Congress when they added this ability to object are quite clear that a private property owner can do whatever they want under federal law. Now, I think maybe your question also gets to a hypothetical that is not present here that we've seen, but say there's a state court or a local zoning ordinance that automatically triggers as a result of federal listing. You saw that in the Moody Hill case from the Second Circuit. Certainly in that situation, we would not deny that, you know, that is an impact to a property owner's interest. But again, we don't have those hypotheticals here, and I am very surprised to hear this new information about the interchange because I have been scratching my head about this case to say what is the harm and what is, you know, the interest because simply disliking the result doesn't get you there under Article III for actual, imminent, concrete, particularized injury. What would you say the obligation of the federal keeper is in terms of review? In terms of review, here where you did have objections, the regulations are clear that the keeper does have to review and, you know, review the nomination package and satisfy itself that it's eligible. And what does that mean, like, in this case? It's like you look at all 183 votes? You look at the electronic? What does that mean? If your question is getting to whether there was an independent obligation for the keeper themselves to, you know, go back to the county tax rolls, then no, that's not our understanding. You know, and I think this is reflected both in the statute. If you're not looking at what's underlying each vote, it sounds like you're only reviewing whether 90 is less than half of 183. That's not much review. I'm sorry, Your Honor. You're looking at the objections that come in. They're in the regulations. They do have to be written and notarized. I think as to this issue of timing, those regulations also certainly say, you know, you can have somebody that wasn't on the initial list, which is put together when they're going to, you know, notify folks of the nomination. And that's done from the tax rolls or the county property records. But, you know, the regulations recognize it's fully possible that ownership changes hands, and especially here where you have, you know, 157 actual parcels, I believe, and the process goes on for a couple years. You know, I think that the notion that appellants are putting forth that somehow that stops in time, and somebody that buys a piece of property that's not yet subject to, you know, national register listing could not object, that certainly would not be fair. You know, and I think that the 1981 regulations that the Park Service promulgated, they talk about that in the preamble to the register. They say, you know, we recognize that Congress looked at this and said, you could have some complications, especially when it comes to districts. And we, you know, kind of thought about this, and we think this is like the most fair way for this to happen. It was put out for public comment. It's one person in the federal government that reviews this, and how many of these are there a year? Well, the Keeper does have a staff. You know, the Keeper is a title in our office, but there are staff. You've got to change this name. It does sound illiterate. It's dystopian. The Keeper of Memory is what I keep wanting to say in my head, and I'm like, you can't possibly mean that. But anyway, back to the point. A staff of how many? I'm not sure about that. Okay, how many a year? How many a year is this group reviewing? Well, in the record, and in the district court decision, at least it talks about 2009, which is the year that this nomination was processed. There were approximately 1,000. That year? Yes. Not all of districts, of course. Of individual properties, of... And I think, again, that reflects... How often have the Federal Keeper rejected? That I do not know. I can tell you that there's not much case law... You do not know no evidence of a single rejection? I don't know that either. I don't have those statistics at my fingers. I can get them for you if you would like, but I don't know that offhand. But I think the dearth of case law certainly indicates that this doesn't arise all that much, and I think that's because there are significant tax benefits. As much as these appellants don't want their... How do the tax benefits work? What are the tax benefits? Sure. The citation in an appellant's reply brief is actually to a tax credit for rehabilitation of structures, so we don't think that speaks to injury, but it's rehabilitation of income-producing structures. So I think a good example for you to get your head around is like an old factory that's converted into a restaurant or a hotel. Those type of... And that actually leverages... Just tell me how it works. So I have something, I fix it up, and I get a credit, or I get a reduction of my income? What happens? Yeah, you apply to the keeper or the National Park Service, and they can certify that, yes, this meets the criteria, and then through the IRS... The IRS actually handles the tax credit. You get money, or you just get a reduction in your taxes?  I got it. And there are also availability for grants. There's grant eligibility from the Historic Preservation Fund for qualifying work. And then, of course, which is not a federal issue, but there's a lot of state and local kind of matching programs or matching funds that people are eligible a lot of times. Here, we don't have any... How are the property owners restricted, if the property is listed, restricted in terms of their use? Because you said earlier they can do whatever they want, and I'm somewhat skeptical about that. No, a private property owner, if it's listed today, they can raise the building tomorrow. If it requires a federal permit... ...district as opposed to designating the house... ...any historic property, we're eligible. I mean, I'm just distinguishing the program that's about historic buildings. There, there are tremendous restrictions. The landmark, yes. But you're saying when it's a district, there aren't these limitations on raising the building, if you want. The distinction is not whether it's a district or an individual building. It's whether it's on the National Register or whether it's listed as a landmark, which is a different statute and a different set of regulations that are not an issue here. What's the benefit to the federal government of listing all these properties? Well, you know... If there are no restrictions on what the property owners can do, just creating lots and lots of headaches, what's the benefit to the government? In 1966, when the first act was passed and the Congressional Policy Declarations do say, you know, we're losing a lot of our history. We're losing a lot of, you know, not only our urban areas, our historic built environment, we're losing our rural agricultural areas. So certainly the Congressional Policy to provide this incentive program. And so it really is just... So it's nothing but incentives and maybe a little bit of tax help to not do something that the feds would like you not to do. But there aren't any actual restrictions on your doing it. That's correct. Now, I do have to give you the caveat, which we talk about in the briefs, again, that if a federal agency is going to take an action that could impact the property, they have to do a stop and a look and a consider. You know, as part of... You may be familiar with the National Environmental Policy Act, which is a long, you know, in-depth analysis of an action. And so that's a separate consideration that they then do as part of that analysis. But again, it does not prohibit an interchange from happening. For instance, it doesn't... It makes it harder to have that. It depends on the property. It depends on the considerations. You said it's designated as this rural farming district. That means it must impose restrictions on some property owners that decide they want to create a mall. It does not create a restriction on the private property owners' use under federal law with what they want to do with that property. Well, just to make sure I'm understanding what you're saying, are you just saying it doesn't restrict it in the sense that ultimately could happen, but to get there, you'd have to comply with all these NEPA-like obligations? Only if there's a federal agency involved. If we had evidence about the highway exchange, which, again, I haven't seen, you know, that would presumably be Federal Highways Administration or Department of Transportation. There would be an obligation on that federal agency to consider how the project impacts any historic property, not just the district. But absent a federal agency involvement, there is no restriction on what these appellants can do with their property. Who sets the regulations on when they consider, what exactly they consider to be an impact on the private property? That is, I think, you have two statutes involved there. You have the National Historic Preservation Act and then you have the National Environmental Policy Act. So the National Historic Preservation Act regulations are the regulations we're talking about here that were generated by the Park Service in 1981 and finalized in 1983. And the National Environmental Policy Act, the Council on Environmental Quality sets general regulations, but some agencies have their own additional regulations for things that they consider during that process, like the Forest Service, for example, knows the types of impacts it regularly encounters, and so they may develop additional. As far as Department of Transportation or Federal Highways, I'm not familiar with that, I'm sorry. So just to make sure I'm understanding Judge Batchelor's question, your answer, it's kind of a one-way thing. So unless you have another federal agency involved, like the Department of Transportation, if what you're doing is consistent with the designation, making it more rural, making it look more historic, you get benefits, so they incentivize you that way, but they don't punish you if you do the opposite. So if you had the mall in a rural area and you were going to take the mall down and make it rural again, you might get some federal benefits, but if it was pure farming land in a farming district and you turn it into a mall, it wouldn't stop you, but they also wouldn't help you. Is that how you were answering her point? I think that's a fair way to put it. I'm not exactly sure about automatic incentives for tearing down a mall, but yes. Okay, so if it otherwise fit, okay. Yes. All right. But you are certain about it wouldn't stop you? Correct. It would be an obligation on the federal agency to consider how the project impacts. The federal agency is not this agency. Correct. It would be the Department of Transportation or the Forest Service, unlikely here, something like that. And then I know I'm way over my time here. I would just submit, finally, on the merits of the petition, a D-list. We think it's very important that the state courts found that the State Preservation Office complied with the regulations. You know, there were these musings about due process, which frankly aren't entirely clear. They found a due process violation. But they didn't ever explain what the deprivation of a protected right was. And those decisions are not binding. Certainly we were not a party, as we were discussing earlier. But I think for the merits of the petition to D-list, the finding that the State Preservation Office actually followed all the regulations is a key point. There can't be prejudicial procedural error, even looking at the state court determinations. All right. Thank you very much. Thank you. Yes, we'll hear from Mr. Redford with your three minutes of rebuttal. Yes, sir. Thanks, Judge. Judge Donald made a comment or a question very early on about the voting of the majority. Let me just make clear. There never is a vote taken where people say, I'm in favor of this. What happens is the nomination package gets prepared. People get notice. Owners get notice. And then if you take no action in response, you are deemed to be in favor. So that's part of this process that the courts didn't like, that it was flawed. Because they said, look, objectors have to do all the work, spend all the money, make all the effort, present a written objection, but people who are silent are deemed to be in favor. So as far as the vote goes, just say it's 92 to 90. The other side is saying they got the majority, therefore it gets listed. So we only had 90. When we had 90 hard written objections, they may have only had 10 people who actually put anything in writing that said they're in favor of it. Everybody else was just silent. So you've created something completely inconsistent with what the statute says. What the statute says is you get to object or you get to concur, and if the majority is objections, you don't list. That just doesn't happen. That's the problem here from day one. The record, and we've talked about the record. I mean, I hear your point. Do you have a case that says that violates, say, the federal constitution or violates the EPA? I mean, because it's not, you know, voting has all kinds of components. You can have a majority of people that vote, which is what you want, but you could imagine a world in which you have, you know, not that many interested parties. 183 is not that high. You could have the assumption everybody knows about this, and if they don't act, it's not unfair to say, well, they must not have a problem. Well, if the regulation is not just inconsistent but contrary to the statute, isn't that exactly what the statute says? What does the statute say that proves you're right about this point? The statute says you get to, the majority of the owners within a district must be given the opportunity to concur in or object to the nomination. If a majority of said owners object, the district will not be included on the national register. That's 54 U.S.C. 302.105. That doesn't speak to the point you're making. No. What I'm saying is the reg then creates this assumed consent. My point is, isn't that exactly? Your problem is that that statute that you just read to us says, if a majority object, it doesn't say if more object than concur, which is the point that I think you want us to accept. No. What I want the court to appreciate is, we had a majority over. If you had 10 people. We understand your point. We totally get your point. That is not something. You really say, I say, Mr. Brookfield, that you want it to be read that the concurrences must be affirmative. It just can't be an action of inertia. Correct. Correct. Isn't this an example of exactly what the Supreme Court said three weeks ago in the West Virginia versus EPA case, that the agency has exceeded its authority? They totally changed and acted contrary to what the statute says. I don't think I'm violating due process. All the times I send memos to my colleagues saying, if I do not hear an objection from you within 10 days, I'm assuming you want to do this. You have no idea how often this happens. You're not impacting their property rights, are you? You're not saying, I'm going to impair your real property. After this case, I may think about it. But I am impacting things. I do this with very significant things. This happens all the time. The statute just does not say what you said it said. I'm sorry. It doesn't. The statute gives my clients some rights. That objections mean something. That's the point here. And if objections don't mean something, and it's predetermined from the minute a non-owner, non-resident creates this package, that there is basically nothing landowners can do. But the 90 votes are counted. The 90 counted, they mean nothing. They meant nothing, as was rubber-stamped by Mr. Lothert. But only because, in your view, the regs create a right of the owners who concur to not explicitly and affirmatively state that position. That's a fair way to say it. Yes, ma'am. It's a fair way to say it. So is that not exceeding the authority? Part of your problem is whether the agency's reading of that statute, as they then set up these regulations, is an unreasonable reading of the statute. And you would say that it is. The Supremes have apparently decided they're not any time soon going to actually tackle the Chevron issue. But these kinds of agencies, this is not an extreme example of an agency looking at the statute and saying, okay, so if you're going to object, here's how you need to do it. And if you don't object, then you're okay with it. I understand. But give me any other example where you were impacting someone's real property ownership rights when you do that. That's where you're in state court. I'm still trying to figure out how much this does impact. Well, if it doesn't mean anything, why are we doing it? That's a good question. You're asking those questions. I would be careful about that, just to pause. Usually the best way this works with advocates is they point to cases where someone says, you can't do this, because that's extending the language too far. That's a form of voting that violates due process. That's a form of voting that's inherently unfair. So do you have a case? It doesn't have to be a case out of this statute. I get it. There's not a lot of case law. But do you have a case that says, it's just fundamentally unfair to do a default option, which we understand how the default option works, so please, no more on the default option. We got it. Do you have a case that says default options, they create a bias, or default options can't work with private property. That would be really helpful to us, because we understand your intuition, but now we want to have support to act on it. I would just request to be permitted to supplement the record. I can't speak off the top of my head to that point. Okay. Well, I think we've gotten everything we need. Thank you so much to both of you for your briefs, for answering our questions, which we're always grateful for. Thank you. We appreciate it. And the case will be submitted.